UNITED STATES of America, Appellee,

v.

Thomas Lee CURTIS, Appellant.

UNITED STATES of America, Appellee,

v.

Patty M. THOMPSON, Appellant.

UNITED STATES of America, Appellee,

v.

Patty M. THOMPSON, Appellant.

Nos. 91–1726, 91–1760 and 91–2334.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1991.

Decided May 27, 1992.

Dean Stowers, Des Moines, Iowa, argued for appellant Thomas Lee Curtis.

William Bauer Burlington, Iowa, argued for appellant Patty Thompson.

John Beamer, Des Moines, Iowa, argued for appellee U.S.

Before WOLLMAN, Circuit Judge, and BRIGHT and ROSS, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Thomas Lee Curtis and Patty M. Thompson appeal their convictions and sentences for conspiracy to manufacture marijuana and the manufacture of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. Thompson also appeals the district court's order of forfeiture of her residence from which marijuana was seized. We affirm.

I.

On October 31, 1989, the Sheriff's Office of Des Moines County, Iowa, received information from a confidential informant that marijuana was being grown in the basement of Thompson's residence in rural Burlington, Iowa. On August 28, 1990, following ten months of surveillance and investigation, Deputy Sheriff Jeffrey White obtained and executed a search warrant of Thompson's residence. Curtis and Thompson, who resided together at the residence, were arrested after marijuana plants were found growing in Thompson's basement. Paraphernalia related to the growing and smoking of marijuana was also seized. Both Curtis and Thompson were charged with conspiracy to manufacture marijuana, manufacture of marijuana, possession with intent to distribute marijuana, and possession of a firearm in relation to those offenses. Thompson was also charged with using or intending to use her home to commit or facilitate the drug offenses, subjecting her home to civil forfeiture pursuant to 21 U.S.C. § 853(a).

Prior to trial, Curtis and Thompson moved to suppress the evidence seized from Thompson's house, claiming that the application for the search warrant contained false information and was otherwise insufficient to support a finding of probable cause. During a hearing on the motions, Curtis and Thompson orally moved for disclosure of the identity of the confidential informant who had provided information to Deputy White. The district

court,[1] after conducting an *in camera* review of evidence relating to the confidential informant, denied appellants' motion for disclosure. The district court also denied appellants' motions to suppress, finding that there had been no showing that Deputy White knowingly or recklessly presented false information to the magistrate in his affidavit for the search warrant.

Following a three-day trial, Curtis and Thompson were convicted of conspiracy to manufacture marijuana (Count I) and manufacturing marijuana (Count II), and acquitted of the remaining charges. The jury also returned a verdict that Thompson's residence should be forfeited. The district court sentenced Curtis to 120 months imprisonment and Thompson to 60 months imprisonment, and entered an order of forfeiture for Thompson's residence. Curtis and Thompson now appeal.

## II.

Both Curtis and Thompson argue that the district court erred in denying their motions to suppress. The essence of their argument is that the warrant affiant, Deputy White, was reckless in failing to investigate certain information provided by the confidential informant and Thompson's ex-son-in-law, which was included in the search warrant application.[2] Curtis and Thompson claim that both statements were unreliable, because (1) the confidential informant, who was being questioned on several "bad checks" at the time of his statement, was motivated to provide false information in an effort to "cooperate" with the police, and (2) Thompson's ex-son-in-law, who was being questioned on his alleged assault on Thompson's daughter at the time of his statement, was motivated to provide false information against Thompson based on his history of domestic disputes with the Thompson family.

■ Where a criminal defendant seeks suppression of evidence by challenging the veracity of information contained in the warrant affidavit, the only relevant inquiry for the district court is whether the warrant affiant knowingly, deliberately or recklessly included false statements in the warrant affidavit. *See Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). On appellate review, we consider the district court's disposition of the motion to suppress under a clearly erroneous standard. *United States v. Lueth*, 807 F.2d 719, 725 (8th Cir.1986).

■ The district court held an evidentiary hearing on appellants' motions to suppress, specifically with regard to the reliability of the information obtained from the confidential informant. After hearing testimony from Shon Thompson (appellant Thompson's son), Deputy White, and another officer who was present during the search of Thompson's residence, the district court properly focused its inquiry on whether Deputy White knowingly or recklessly presented false information to the magistrate in the warrant application. The district court found no evidence that Deputy White had knowingly presented false information. The court also found no evidence that Deputy White had recklessly presented false information to the magistrate, noting that the confidential informant had sufficiently established himself as a reliable informant during the ten-month period after his initial report to Deputy White. The district court did not consider whether Deputy White was reckless in including the information obtained from Thompson's ex-son-in-law, because appellants did not focus or present any evidence on that particular issue.

Having reviewed the record on this matter, we cannot say that the district court clearly erred in its findings. Furthermore, we note that, aside from the information

---

1. The Honorable Harold D. Vietor, Chief Judge of the United States District Court for the Southern District of Iowa.

2. The confidential informant told Deputy White that during a conversation with Shon Thompson (appellant Thompson's son), Shon claimed to have stolen approximately ten pounds of mari-

juana from his mother's house and stated that there were approximately 60 marijuana plants growing in her basement. Thompson's ex-son-in-law, David Welcher, also told Burlington police that Thompson had "pot" growing in her basement.

provided by the confidential informant and Thompson's ex-son-in-law, there was other evidence to support a finding of probable cause for the search warrant. Specifically, there were several anonymous calls to police, reporting drug activity and the growing of marijuana at Thompson's residence. There was also evidence of Curtis' purchase of hydroponic growing equipment in March of 1989 and of excessive electricity usage at Thompson's residence during the period of investigation, which was consistent with an indoor marijuana growing operation. We therefore affirm the district court's denial of appellants' motions to suppress.

### III.

Curtis also asserts that the district court erred in denying appellants' motion for disclosure of the confidential informant's identity. He argues that such disclosure was necessary in order to establish, through cross-examination, the informant's motive for fabricating a story about Shon Thompson's claims of marijuana at his mother's home.

■ The burden is on the defendant to show the materiality of the need for disclosure of a confidential informant's identity. *United States v. Grisham*, 748 F.2d 460, 463–64 (8th Cir.1984). That burden requires more than mere speculation that the testimony of the informant might prove to be helpful to the defense. *Id.* at 464; *United States v. Buffington*, 815 F.2d 1292, 1299 (9th Cir.1987). There must be some showing that the disclosure is vital to a fair trial. *United States v. Weir*, 575 F.2d 668, 673 (8th Cir.1978).

■ At the suppression hearing in this case, defense counsel asserted that it hoped disclosure would lead to the discovery that a "deal" had been cut between the informant and the government, as a possible motive for the informant's story regarding Shon Thompson's claims. Although the court noted that defense counsel's position was rather speculative, it proceeded to conduct an *in camera* inquiry to determine the materiality of the confidential informant's testimony. Thereafter, the court concluded that disclosure of the informant's identity was not critical to appellants' defense.

Having reviewed the record of the hearing, as well as the record made *in camera*, we conclude that the district court did not abuse its discretion in denying appellants' motions for disclosure. Appellants failed to establish that disclosure of the informant's identity or his testimony was vital to their defense. We therefore affirm the district court's denial of the motions for disclosure.

### IV.

■ Next, we consider appellants' claims relating to their sentencings. Curtis asserts that the district court's five-year enhancement of his sentence for a prior state felony conviction, pursuant to 21 U.S.C. § 841(b)(1)(B), was cruel and unusual punishment in violation of the Eighth Amendment and a denial of equal protection of the law. Curtis received the five-year enhancement for his 1980 conviction for possession of methaqualone, classified as a Class IV felony under Illinois law, for which he was fined $300. Curtis argues that the same offense is classified as only a serious misdemeanor in many states (e.g., Iowa, California, New York), and thus individuals who commit similar offenses receive disparate sentences, depending on how the offense is classified under state law. He asserts that the resulting disparity of sentences is cruel and unusual punishment within the meaning of the Eighth Amendment and a violation of equal protection.

At sentencing, the district court rejected Curtis' argument, stating,

[I]t is for each state to enact its own criminal laws and to find what the punishment shall be for prohibited conduct and make a determination whether a particular prohibited conduct shall be a misdemeanor or shall be a felony. ... [T]he Federal Enhancement Statute, is predicated on whether the prior conviction was a felony conviction, not predicated on conduct and whether certain types of conduct might be a felony in one place and a misdemeanor in another.

We agree with the district court's determination on this issue. The Eighth Amendment only prohibits the imposition of sentences which are *grossly* disproportionate to the severity of the crime. *See Solem v. Helm,* 463 U.S. 277, 288, 303, 103 S.Ct. 3001, 3008, 3016, 77 L.Ed.2d 637 (1983); *Rummel v. Estelle,* 445 U.S. 263, 271–72, 100 S.Ct. 1133, 1137–38, 63 L.Ed.2d 382 (1980). In *Rummel,* the Supreme Court rejected the defendant's claim that the imposition of a life sentence under a Texas recidivist statute for obtaining $120.75 by false pretenses was cruel and unusual under the Eighth Amendment; the defendant had two previous felony convictions, one for fraudulent use of a credit card to obtain $80 worth of goods or services and another for passing a forged check in the amount of $28.36. In that case, the defendant asked the Court to compare the penalties imposed under the Texas recidivist program with those of other states. Noting the complexities confronting any court that would attempt such a comparison, the Court stated,

> Even were we to assume that the statute employed against Rummel was the most stringent found in the 50 States, that severity hardly would render Rummel's punishment "grossly disproportionate" to his offenses or to the punishment he would have received in the other States. ... Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State.

*Id.* at 281–82, 100 S.Ct. at 1143 (footnote omitted). The Court concluded that the classification of crimes and range of sentence to be imposed "are matters largely within the discretion of the punishing jurisdiction." *Id.* at 285, 100 S.Ct. at 1145.

■ Based on the discussion set forth in *Rummel,* the district court properly declined Curtis' request that it compare the differences in which Illinois and other states have chosen to classify the crime of possession of methaqualone. The district court also properly concluded that the enhancement statute, 21 U.S.C. § 841(b)(1)(B), merely requires the sentencing court to focus on the defendant's prior *felony* convictions; it does not require the sentencing court to make a comparison of the way in which certain conduct has been classified in various jurisdictions. It cannot be said that Curtis' enhanced sentence was grossly disproportionate to the severity of his crime. We therefore conclude that the enhancement of Curtis' sentence for his prior state felony conviction was not cruel and unusual punishment under the Eighth Amendment.

■ We also find Curtis' equal protection claim to be without merit. In reviewing a sentence challenged on equal protection grounds, we consider whether Congress "rationally could have decided that the classification would further the statutory purpose." *United States v. Thomas,* 900 F.2d 37, 39 (4th Cir.1990) (quoting *United States v. Richards,* 737 F.2d 1307, 1310 (4th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985)). As evidenced by the unambiguous language of § 841(b)(1)(B), Congress intended to impose heavier penalties on persons with one or more prior felony convictions. We find that such penalties serve the purpose of deterring repeat offenders and segregating repeat offenders from the rest of society for extended periods of time, and are rationally related to Congress' objective of protecting the public welfare. *United States v. House,* 939 F.2d 659, 664 (8th Cir.1991); *Rummel, supra,* 445 U.S. at 284–85, 100 S.Ct. at 1144–45. We therefore conclude that the enhancement of Curtis' sentence did not violate his right to equal protection.

With respect to her sentence, Thompson asserts that the district court erred in finding that she was responsible for the manufacture of 125 marijuana plants. The evidence demonstrated that a total of 335 marijuana plants were seized from Thompson's residence, 198 of which were individually potted and four inches to three feet in height, and 137 of which were bulk planted and two inches or less in height. In calculating the number of plants for sentencing purposes, the district court eliminated the

137 "seedlings" which were two inches or less in height, as well as those plants which appeared to be dead or dying, ultimately arriving at a total of 125 plants.

■ Thompson specifically argues that in order for marijuana plants to be counted for purposes of sentencing, the plants must be viable (i.e., have some degree of root formation, have been in its own propagating unit, and have the possibility of surviving outside the propagating unit). She also asserts that only fifty percent of the viable plants should be considered for sentencing, because only the female marijuana plant produces the controlled substance, THC. Based on these assertions, Thompson argues that the district court should have included only nine to eighteen marijuana plants in calculating her base offense level.

We disagree. This court has previously rejected the argument that § 2D1.1(c) of the Guidelines contemplates only mature, viable marijuana plants. *United States v. Bechtol,* 939 F.2d 603 (8th Cir.1991). In *Bechtol,* we specifically held that a cutting with developed root hairs is a "plant" contemplated under the Guidelines, regardless of viability. *Id.* at 605. *See also United States v. Eves,* 932 F.2d 856, 860 (10th Cir.) (rejecting a defendant's viability argument and holding that a cutting with a root system was a marijuana plant under 21 U.S.C. § 841(b)), *cert. denied,* —— U.S. ——, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991); *United States v. Carlisle,* 907 F.2d 94, 96 (9th Cir.1990) (holding that a cutting with root formation is a "plant" under the Guidelines).

■ We also reject Thompson's argument that only the female marijuana plants may be counted in calculating her base offense level. The Guidelines do not distinguish between male and female plants, and we decline to do so here. Based upon the record evidence and our discussion above, we conclude that the district court did not err in calculating the number of marijuana plants for establishing Thompson's base offense level.

## V.

■ Lastly, we consider Thompson's claim that the district court erred in finding her residence was subject to criminal forfeiture pursuant to 21 U.S.C. § 853(a). She argues that the Iowa homestead exemption, Iowa Code § 561.16,[3] applied in this case, and thus her residence was exempt from forfeiture under § 853(a). The district court rejected this argument, finding that the federal forfeiture law superseded the Iowa homestead exemption law.

We agree with the district court. It is a basic principle of constitutional law that, under the Supremacy Clause of Article VI of the Constitution, federal law supersedes state law where there is an outright conflict between such laws. *See Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962); *Parten v. Consolidated Freightways Corp.,* 923 F.2d 580, 582 (8th Cir.1991). *See also* Laurence H. Tribe, American Constitutional Law § 6–24, at 377–78 (1978). Under its authority to regulate commerce pursuant to Article I, § 8, cl. 3, of the United States Constitution, Congress may regulate both interstate and intrastate traffic and possession of controlled substances, *United States v. Visman,* 919 F.2d 1390, 1392–93 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 442, 116 L.Ed.2d 460 (1991), and may require any person convicted of a federal drug offense to forfeit any property used to commit or facilitate the commission of the drug offense "irrespective of any provision of State law." 21 U.S.C. § 853(a); *United States v. Possick,* 849 F.2d 332, 340–41 (8th Cir.1988). We therefore conclude that the federal forfeiture statute, § 853(a), clearly superseded the homestead exemption set forth in Iowa Code § 561.16. To hold differently would virtually destroy the uniformity of application of § 853(a) and

---

**3.** Iowa Code § 561.16 provides in relevant part: "The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." In *Matter of Bly,* 456 N.W.2d 195, 199 (Iowa 1990), the Iowa Supreme Court held that a forfeiture of a homestead in connection with the commission of a criminal offense was a judicial sale within the meaning of § 561.16.

would interfere with the intent of Congress. We note that there were no other persons in this case, i.e., a husband or children, claiming to have any homestead or equitable interest in the subject property.

Accordingly, we affirm the convictions and sentences of appellants Curtis and Thompson, and affirm the forfeiture of Thompson's residence pursuant to 21 U.S.C. § 853(a).